# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ADT LLC, and ADT US HOLDINGS, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 15-2252 |
| | § | |
| CAPITAL CONNECT, INC., POWER | § | |
| HOME TECHNOLOGIES, LLC; | § | |
| SECURITY INVESTMENTS LLC, | § | |
| ALLIANCE SECURITY INC., | § | |
| MAXIMUM SECURITY ALARM, INC., | § | |
| JOHN LEE; JOHN BACKUS; VICTOR | § | |
| VEGA; TREVOR MCALEES; and | § | |
| ANTHONY BONARDI, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT SECURITY INVESTMENTS LLC'S MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6) AND BRIEF IN SUPPORT

Greg K. Winslett
Texas Bar No. 21781900
gwinslett@qslwm.com
Brent Lee
Texas Bar No. 24036959
blee@qslwm.com
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SECURITY INVESTMENTS LLC**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     SUMMARY OF ISSUES & BACKGROUND ........................................................... 1

II.    LEGAL STANDARD ...................................................................................................... 3

III.   ARGUMENT & AUTHORITY ...................................................................................... 4

      A. THE COURT LACKS PERSONAL JURISDICTION OVER SECURITY INVESTMENTS ........ 4

          1.  Security Investments Lacks the Necessary "Continuous and Systematic Contacts for General Jurisdiction in Texas ...................................................... 5

          2.  No Substantial Connection Exists Between Security Investments, Texas, and this Action to Support Specific Jurisdiction ................................................ 6

          3.  Exercising Jurisdiction Would Violate Fair Play and Substantial Justice ...... 10

      B. PLAINTIFFS' STATE LAW CLAIMS ARE UNVIABLE AND SHOULD BE DISMISSED UNDER RULE 12(B)(6) ...................................................................................... 11

          1.  Texas Law Does Not Apply Extraterritorially ................................................ 11

          2.  The Commerce Clause Precludes Application of Texas Law to Out-of-State Conduct ...................................................................................... 13

IV.   PRAYER FOR RELIEF ............................................................................................... 15

CERTIFICATE OF SERVICE ........................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Allred v. Moore & Peterson,*
  117 F.3d 278, 281(5th Cir. 1997) .......................................................................... 4

*Ashcroft v. Iqbal,*
  556 U.S. 662, 678-79 (2009) ................................................................................ 4

*Baldwin v. G.A.F. Seelig, Inc.,*
  294 U.S. 511, 521 (1935)..................................................................................... 14

*Bass v. Hendrix,*
  931 F. Supp. 523, 536 (S.D. Tex. 1996) ............................................................. 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 555 (2007)....................................................................................... 4

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559, 571 (1996)..................................................................................... 14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.,*
  476 U.S. 573, 583 (1986)..................................................................................... 14

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462, 476 (1985)..................................................................................... 10

*Busch v. Viacom Int'l, Inc.,*
  477 F. Supp. 2d 764, 773 n.5 (N.D. Tex. 2007) ................................................. 10

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.,*
  492 F.3d 484, 486-87, 489-90 (4th Cir. 2007)...................................................... 15

*City of Houston v. Clark,*
  197 S.W.3d 314, 320 (Tex. 2006)......................................................................... 13

*Coca-Cola Co. v. Harmar Bottling Co.,*
  218 S.W.3d 671 (Tex. 2007)........................................................................... 12, 13

*Daimler AG v. Bauman,*
  134 S. Ct. 746, 761 (2014).................................................................................... 5

*Destec Energy, Inc. v. S. Cal. Gas Co.,*
  5 F. Supp. 2d 433, 464 (S.D. Tex. 1997), *aff'd*, 172 F.3d 866 (5th Cir. 1999) ........................ 12

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333, 338 (5th Cir. 2008) ........................................................................ 4

*Eric M. Berman, P.C. v. City of New York*,
  895 F. Supp. 2d 453, 488 (E.D.N.Y. 2012) ...................................................... 14, 15

*Estate of Graham v. Sotheby's Inc.*,
  860 F. Supp. 2d 1117, 1124, 1126 (C.D. Cal. 2012) ............................................ 15

*Gardemal v. Westin Hotel Company*,
  186 F.3d 588, 592 (5th Cir. 1999) ........................................................................ 3

*Greer v. Harmon Stores, Inc.*,
  2009 WL 7804572, at *1 (S.D. Tex. June 3, 2009) ................................................ 4

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324, 335-36 (1989) ........................................................................ 13, 14

*Herman v. Cataphora, Inc.*,
  730 F.3d 460, 465-66 (5th Cir. 2013) ................................................................ 7, 9

*Int'l Dairy Foods Ass'n v. Boggs*,
  622 F.3d 628, 644, 645 (6th Cir. 2010) .............................................................. 14

*ITL Int'l, Inc. v. Constenia, S.A.*,
  669 F.3d 493, 496, 498 (5th Cir. 2012) ............................................................ 4, 6

*McFadin v. Gerber*,
  587 F.3d 753 (5th Cir. 2009) ............................................................................ 7, 8

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429, 431, 433, 434 (5th Cir. 2014) .............................................. 5, 6, 8, 9

*Peterbilt-Southern Sales, Inc. v. Pacific Car & Foundry Co.*,
  325 F.2d 420 (5th Cir. 1963) .............................................................................. 15

*Smirch v. Allied Shipyard, Inc.*,
  164 F. Supp. 2d 903, 912 (S.D. Tex. 2001) .......................................................... 11

*Teltech Sys., Inc. v. Barbour*,
  866 F. Supp. 2d 571, 576-77 (S.D. Miss. 2011), *aff'd on other grounds*,
  *TelTech Sys., Inc. v. Bryant*, 702 F.3d 232 (5th Cir. 2012) .................................. 14

*Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*,
  100 F.3d 429, 433 (5th Cir. 1996) ...................................................................... 13

*United States ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180, 186 (5th Cir. 2009) ............................................................... 4

*Walden v. Fiore*,
   134 S. Ct. 1115, 1122 (2014) ............................................................... 4, 8

*Westwind Acquisition Co. LLC v. Universal Weather & Aviation, Inc.*,
   668 F. Supp. 2d 749, 753 (E.D. Va. 2009) ............................................. 13

**Statutes**

28 U.S.C. § 1391(b) .......................................................................... 2

Federal Rule of Civil Procedure 12(b)(2) ............................................ 3

TEX. BUS. & COM. CODE §§ 17.12(a), 17.46 ...................................... 3

TEX. BUS. & COM. CODE 17.45(6) .................................................... 11

Texas Free Enterprise and Antitrust Act ("TFEAA") ......................... 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ADT LLC, and ADT US HOLDINGS, INC.,** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| **v.** § | **CIVIL ACTION NO.: 15-2252** |
| § | |
| **CAPITAL CONNECT, INC., POWER** § | |
| **HOME TECHNOLOGIES, LLC;** § | |
| **SECURITY INVESTMENTS LLC,** § | |
| **ALLIANCE SECURITY INC.,** § | |
| **MAXIMUM SECURITY ALARM, INC.,** § | |
| **JOHN LEE; JOHN BACKUS; VICTOR** § | |
| **VEGA; TREVOR MCALEES; and** § | |
| **ANTHONY BONARDI,** § | |
| § | |
| **Defendants.** § | |

**DEFENDANT SECURITY INVESTMENTS LLC'S MOTION TO DISMISS UNDER**
**RULES 12(b)(2) AND 12(b)(6) AND BRIEF IN SUPPORT**

Defendant Security Investments LLC ("Security Investments") files this Motion to Dismiss because (1) the Court lacks personal jurisdiction over Security Investments and (2) the second unfair competition count based on Texas statutes (the DTPA and deceptive advertising statute) fails to state a claim upon which relief can be granted because the statutes do not apply extraterritorially to out-of-state conduct that was not directed to Texas.  In support, Security Investments respectfully shows as follows:

## I.  SUMMARY OF ISSUES & BACKGROUND

Plaintiffs filed this action against multiple, unrelated Defendants for alleged unfair competition under the Lanham Act and the Texas Business & Commerce Code.  Plaintiffs allege the Defendants are dealers of Plaintiffs' competitor, Monitronics, or sales agents selling alarm contracts for Monitronics' benefit.  *See* Compl. ¶ 21.  Plaintiffs allege the Defendants used

Plaintiffs' trademark and made false and misleading statements to Plaintiffs' customers that Defendants were associated with ADT and confused Plaintiffs' customers as to Defendants' affiliation. *Id.* ¶¶ 26-33. While there is substantial dispute concerning who engaged in the alleged misconduct that is attributed to Security Investments in the Complaint and whether Security Investments engaged in any wrongdoing, there does not appear to be any dispute concerning facts related to the jurisdiction determination.

The Complaint does not expressly allege a basis for personal jurisdiction over Security Investments. In the "Jurisdiction and Venue" section of the Complaint, Plaintiffs allege:

> Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial number of events giving rise to the claims asserted in the Complaint occurred in this District. Specifically, Defendants sell alarm accounts that they procure to Monitronics International, Inc. ("Monitronics"), which has its principal place of business in Dallas, Texas.

*See* Compl. ¶ 16. Plaintiffs further allege that "many of the acts at issue in this case were committed in this District, and customer confusion occurred in this District." *Id.* ¶ 17.

The parties at issue to this motion are not considered Texas citizens. Security Investments is an Ohio corporation with its principal place of business in Ohio. *Id.* ¶ 6. Plaintiffs are considered citizens of Delaware and Florida. *See id.* ¶¶ 1-2. The location of non-party Monitronics' principal place of business is irrelevant to the personal jurisdiction determination. Security Investments is not an employee or agent of Monitronics. Plaintiffs' claims are not based on any contract or conduct between Security Investments and Monitronics. Instead, Plaintiffs assert Security Investments' alleged conduct with respect to Plaintiffs' customers was unlawful. *Id.* ¶¶ 105-16.

None of this alleged conduct occurred within Texas. Security Investments denies and objects to Plaintiffs' generic allegation that "many of the acts" and customer confusion occurred

in Texas.   As demonstrated below and in the evidence, Security Investments does not do business in Texas and has never solicited or had any customer in Texas.  While Plaintiffs identify alleged conduct specifically taken in Texas by other Defendants,[1] the "examples" presented in the Complaint regarding Security Investments all relate to alleged conduct in other states with customers from other states (primarily Ohio).  *Id.* ¶¶ 108-11, 113-14.

Accordingly, regardless of the truth of Plaintiffs' allegations, which Security Investments denies, there is no nexus between Security Investments, the alleged conduct, and Texas.  There is no basis for personal jurisdiction—whether general or specific jurisdiction—over Security Investments in Texas.  As a result, Plaintiffs filed this action in an improper forum, and the Court lacks personal jurisdiction over Security Investments.

The Complaint asserts a claim of unfair competition under the deceptive advertising statute and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA").  TEX. BUS. & COM. CODE §§ 17.12(a), 17.46.   These statutes are intended to protect Texas consumers. Under Texas law, the statutes should not be construed to apply extraterritorially to conduct and consumers with no connection to Texas.  Further, applying the statutes extraterritorially would project Texas law to other states and violate the Commerce Clause.  Because the Texas law does not apply to the purported out-of-state conduct and injury, the unfair competition cause of action under Texas law (Count 2) fails to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD

The plaintiff bears the burden of establishing a court's jurisdiction over the nonresident. *See Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).   Personal jurisdiction is properly challenged under Federal Rule of Civil Procedure 12(b)(2).  In making its

---

[1] *See, e.g.,* Compl. ¶ 45 (alleging purported wrongful conduct by Defendant Capital Connect in Texas).

determination, the Court may consider affidavits and recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997). The court accepts as true uncontroverted allegations of the complaint and resolves factual disputes in favor of the plaintiff. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012).

The plaintiff must plead a viable claim to avoid dismissal under Rule 12(b)(6). *See, e.g., Greer v. Harmon Stores, Inc.,* 2009 WL 7804572, at *1 (S.D. Tex. June 3, 2009) (dismissing claim based on the Penal Code as unviable). The complaint must provide both fair notice of the nature of the claim and plausible factual allegations to support the claim that give rise to an entitlement to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). Factual allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). The court should "not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

## III. ARGUMENT & AUTHORITY

### A.      THE COURT LACKS PERSONAL JURISDICTION OVER SECURITY INVESTMENTS

The Complaint should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over Security Investments. The Due Process Clause of the Fourteenth Amendment protects a defendant from being subject to a judgment of a forum with which it has no meaningful contacts, ties or relations. *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012); *see Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (holding that Due Process protects

the defendant and is not intended for the plaintiffs' convenience).  The plaintiff must establish

that the defendant purposefully availed itself of the benefits and protections of the forum state by

establishing minimum contacts with the state.  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429,

431 (5th Cir. 2014).  Jurisdiction may be either general or specific.  *Id.*  Neither form of

jurisdiction exists here.

1.   **Security Investments Lacks the Necessary "Continuous and Systematic" Contacts for General Jurisdiction in Texas**.

To be subject to general jurisdiction in a state, the defendant's affiliations with the state

must be "so continuous and systematic as to render it essentially at home in the forum State."

*Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).  Therefore, the place of incorporation and

principal place of business are the "paradigm bases for general jurisdiction" over a corporation.

*Id.* at 760.  "[C]ontinuous activity of some sorts within a state is not enough to support the

demand that the corporation be amenable to suits unrelated to that activity."  *Daimler*, 134 S. Ct.

at 757.  Similarly, purchases at regular intervals or doing substantial, continuous and systematic

business in a state does not confer general jurisdiction.  *See id.* at 757, 760-61 (describing such a

rule as "unacceptably grasping").  "It is, therefore, incredibly difficult to establish general

jurisdiction in a forum other than the place of incorporation or principal place of business."

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (distinguishing doing

business with Texas and doing business in Texas).

Plaintiffs do not expressly allege general jurisdiction.  Indeed, Plaintiffs correctly allege

that Security Investments is organized under Ohio law with a principal place of business in Ohio.

*See* Compl. ¶ 6; App. at p. 4.  Security Investments' sole member is an Ohio citizen.  App. at p.

4.  Security Investments has no office, employee, or operations in Texas and has never solicited

or had customers in Texas.  App. at p. 5.  Security Investments has never brought suit or

generally appeared in a suit in Texas or advertised in Texas, and it certainly does not consider itself "essentially at home" in Texas. *See* App. at p. 7.

Security Investments is not "essentially at home" in Texas. No basis exists for general jurisdiction over Security Investments.

2. **<u>No Substantial Connection Exists Between Security Investments, Texas, and this Action to Support Specific Jurisdiction</u>**.

To exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014). This requires minimum contacts by the defendant purposefully directed at the forum state and a nexus between the defendant's contacts and the plaintiff's claims. *ITL Int'l, Inc. v. Constenia, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party." *Id.* at 498. The plaintiff's claims must arise out of or result from the defendant's forum-related contacts. *Id.* at 500. Claims that have a "superficial or highly attenuated connection" to the forum contacts do not give rise to specific jurisdiction. *Id.* at 500.

Consequently, although a contract was partially performed in Mississippi, the Fifth Circuit held that trademark claims and general contract issues, with a superficial connection to the activity in Mississippi, did not arise out of or result from the partial performance in Mississippi. *Id.* at 500. The Court stated it made no difference whether the defendant took possession of the goods that were the subject of the contract in Mississippi or elsewhere. *Id.* at 500 ("Partial performance in a state, without more, does not provide an adequate nexus with claims that do not arise out of or result from that performance."). Similarly, for minimum contacts based on defamatory statements, the statements must be adequately directed at the

forum state and not merely felt in the forum state. *Herman v. Cataphora, Inc.*, 730 F.3d 460, 465-66 (5th Cir. 2013).

More on point, the out-of-state sale of goods that infringe on the plaintiff's trademark do not support jurisdiction in Texas. In *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009), the Texas manufacturers (the McFadins, "plaintiffs") of handbags filed suit in Texas against a former sales representative (Grenemyer, the "defendant") based in Colorado for breach of a sales agreement and the sale of knock-off versions of handbags that infringed on the plaintiffs' mark. *Id.* at 756-57. The plaintiffs sent samples from Texas to Colorado, received payment in Texas from the purchasers, and paid commissions on sales to the defendant. *Id.* at 757. The defendant took orders from retailers based in Texas, sent orders to the plaintiffs in Texas for the plaintiffs to ship the handbags to the purchasers, and made commissions on sales. *Id.* The plaintiffs eventually terminated the sales agreement and brought suit in Texas over disputed commissions and the alleged wrongful possession or sale of about 650 items. *Id.* After termination of the sales agreement, the defendant permitted an independent salesperson to act as a sub-representative in selling the knock-off goods of the plaintiffs' competitor at a Texas show and received a commission on those sales in Texas. *Id.* at 756, 758.

The Fifth Circuit held there was no personal jurisdiction over the contract claim, noting that the contract was centered around the defendant's operations outside Texas, the defendant's sales region did not include Texas, the purpose of the agreement was to open non-Texas markets, and the defendant never traveled to Texas to sell the manufacturer's handbags.[2] The contact with Texas came only from the fortuity of the plaintiffs' residence there. *Id.* 761.

---

[2] *Id.* at 760 (rejecting the plaintiffs' argument that jurisdiction was proper based on the contract creating a ten year sales relationship, significant communications between the parties, and sales in Texas).

The Fifth Circuit similarly held there was no personal jurisdiction on the tort claims. *Id.* at 761. A tort committed within the state or an act committed outside the state that causes tortious injury in the state constitutes minimum contacts with the state. *Id.* The plaintiffs argued the defendant's sale of infringing handbags caused injury in Texas and the agency relationship between the defendant and the sub-representative who sold goods in Texas supported jurisdiction. *Id.* The Court held the sale of allegedly infringing handbags was not directed toward Texas and foreseeable injury in the forum is alone insufficient to confer jurisdiction. *Id.* at 762. An agency relationship did not exist between the defendant and the sub-representative, despite the revenue sharing agreement and loaning of goods for display, because the defendant did not direct the sub-representative to sell the goods in Texas. *Id.* at 761-62. In summary, the defendant's involvement in the sale of handbags in Texas "could at most be described as peripheral" and the "tenuous connection" did not rise to minimum contacts."[3]

Here, Plaintiffs refer to Security Investments' status as a dealer of Monitronics in the jurisdictional section of the Complaint. However, this status is irrelevant. "[M]erely contracting with a resident of the forum state does not establish minimum contacts." *See Monkton*, 768 F.3d at 433. The fact that Monitronics' principal place of business is located in Texas is fortuitous. Plaintiffs' focus on Monitronics or alleged activities of other Defendants in Texas cannot establish jurisdiction for Security Investments. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state.").

There is no substantial connection between Security Investments' alleged suit-related conduct and Texas. The Complaint alleges specific instances of alleged misconduct in purported

---

[3] *Id.* at 763. This is in contrast to the co-defendants, the makers and marketers of goods, who purposefully directed the sale of the allegedly infringing bags to Texas by hiring the sub-representative to sell the bags in Texas, contributing to costs for the show in Texas, and paying commissions on the sales in Texas. *Id.* at 758, 763.

misleading or false statements to customers located in Virginia and Ohio.  *See* Compl. ¶ 108-11, 113-14.  As demonstrated, in part, in the declaration submitted with this motion, the allegations are erroneous.[4]  But regardless of the veracity of the allegations, none of the alleged misconduct occurred within Texas, from Texas, or with a Texas customer.  *See* App. at 5-6.  Security Investments has never solicited customers or accounts in Texas, made advertisements to or in Texas, marketed from or within Texas, made statements or representations to potential customers located in Texas, or had a marketing territory that included any part of Texas.  *Id*. at 4-5.  Security Investments is an Ohio corporation and its only office and employees are located in Ohio.  *See Id*. at p. 4.  Security Investments has no relationship with the other defendants in this action and is independent of Monitronics.  *See Id*. at 5.  The claims against Security Investments do not arise out of Security Investments' contacts with Texas.

Plaintiffs cannot even argue Security Investments' alleged conduct caused injury in Texas.  Plaintiffs are incorporated in Delaware and their principal place of business is Florida.  *See* Compl. ¶¶ 1-2.  Any injury allegedly sustained by Plaintiffs occurred in Florida.

Security Investments has not purposefully availed itself of the privilege of conducting business within Texas.  Security Investments could not have reasonably anticipated being haled into a Texas court as a result of the alleged out-of-state conduct.  *See Ritter*, 768 F.3d at 434; *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).  Personal jurisdiction over Security Investments is lacking.

---

[4] *See* App. ¶ 6.  For example, in the first example (paragraph 108) the Complaint alleges that a Virginia customer reported a person named Jerry Pfeister represented he was from ADT.  Security Investments has never solicited business within Virginia and could not sell such an account to Monitronics because Security Investments is not licensed to do business in Virginia and the state is not part of Security Investments' authorized marketing territory. Moreover, Jerry Pfeister has never been an employee of Security Investments.  On information and belief, Jerry Pfeister was a dealer for ADT at one time and still sells accounts to ADT dealers.

3.      **Exercising Jurisdiction Would Violate Fair Play and Substantial Justice**.

Once minimum contacts with the forum state have been established, the contacts are considered in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  The factors for determining fair play and substantial justice include: (1) the burden imposed on the defendant, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 476–77.

The exercise of personal jurisdiction over Security Investments would offend fair play and substantial justice.  Security Investments would be burdened with the time and expense to travel to Texas for at least deposition and trial where Security Investments has never had customers in Texas, availed itself of the privilege of doing business in Texas, or directed the alleged conduct toward Texas.  *See* App. at p. 5; *see, e.g., Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 773 n.5 (N.D. Tex. 2007) ("The court agrees with [defendant] that 'forcing him, a New York citizen with no meaningful contacts with Texas, to defend this lawsuit in Texas would impose an unjustified and unconstitutional burden on him.  This is especially true given that [defendant] did not aim any conduct at Texas relating to the challenged broadcast and given that Texas was in no way the focal point or target of the challenged broadcast.'").

Texas has no interest in the unfair competition claims where no alleged misconduct by Security Investments occurred in Texas and no Texas consumer or party was injured.  Plaintiffs can obtain relief in a proper forum, where the evidence—witnesses and documents—related to

the misconduct is located.  *See* App. pp. 4-5.  The judicial system's interest in efficient resolution

of controversies does not outweigh the other factors, and the efficiency in joining the various

defendants in one suit brings modest judicial efficiency at best; evidence and rulings specific to

each Defendant are necessary.  The shared interest of the states also favors dismissal because the

state where almost all of the alleged misconduct occurred (Ohio) holds the interest in protecting

its citizens and hearing the dispute.  *See, e.g., Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d

903, 912 (S.D. Tex. 2001) (finding that proceeding in Texas, where the plaintiffs and some

witnesses were located, violated fair play and substantial justice as most events, witnesses and

documents were located in Louisiana).

**B.      PLAINTIFFS' STATE LAW CLAIMS ARE UNVIABLE AND SHOULD BE DISMISSED UNDER RULE 12(b)(6).**

Plaintiffs assert state law causes of action based on the DTPA and Texas deceptive

advertising statute.  *See* Compl. ¶¶ 164-65.  As discussed above, Plaintiffs' claims are based on

Security Investments' purported out-of-state conduct soliciting business from out-of-state

customers.  Plaintiffs seek substantial damages from this out-of-state conduct.  *See* Compl. at 41.

However, Plaintiffs cannot rely on Texas law to recover damages based on these claimed

circumstances.  Texas law does not apply extraterritorially under the allegations made, and the

Commerce Clause precludes extraterritorial application of the state law claims.

1.      **Texas Law Does Not Apply Extraterritorially.**

Plaintiffs' attempt to regulate out of state conduct and recover damages for out-of-state

conduct fails as a matter of law.   The statutes do not indicate that the statutes apply

extraterritorially.  Indeed, the DTPA describes "trade" or "commerce" to include such activity

"directly or indirectly affecting the people of this state."  TEX. BUS. & COM. CODE 17.45(6).

The Texas Supreme Court addressed the limited reach of a Texas statute, the Texas Free Enterprise and Antitrust Act ("TFEAA"), in *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2007).  In *Harmar*, soft drink bottlers with franchises to distribute Royal Crown Cola in various states sued Coca-Cola and distributors under the TFEAA and other causes of action. The plaintiffs alleged the defendants' marketing agreements with retailers restrained trade and that the defendants attempted to monopolize.  *Id.* at 674.  The trial court entered judgment on the jury's verdict in favor of the plaintiffs, and the court of appeals affirmed.  *Id.* at 674.

The Texas Supreme Court considered whether Texas courts can adjudicate and remedy anticompetitive injury occurring in another state.  *Id.* at 674.  The court held that "the TFEAA will not support extraterritorial relief in the absence of a showing that such relief promotes competition in Texas or benefits Texas consumers."  *Id.* at 674.  In reaching this conclusion, the court relied on the principal of federalism that no state can legislate except with reference to its own jurisdiction.  *Id.* at 680.  This principle extends to economic competition, and "[o]ne state's legislature cannot dictate to other states what can and cannot be tolerated in economic competition."  *Id.* at 682.

Accordingly, the legislature did not intend the TFEAA to be enforced for injury that occurred in other states.  *Id.* at 682.  Business operations of the claimant occurring outside of Texas are simply not protected by the TFEAA.[5]  Therefore, the TFEAA does not afford a cause of action for injury occurring outside the state.  *Id.* at 683; *see Destec Energy, Inc. v. S. Cal. Gas Co.*, 5 F. Supp. 2d 433, 464 (S.D. Tex. 1997), *aff'd*, 172 F.3d 866 (5th Cir. 1999) (holding that because the conduct occurred out of state and did not affect the ability of consumers to obtain the benefits of competition, the TFEAA did not apply).  Moreover, a statute will not be given

---

[5] "Competition in Texas markets is not maintained or promoted, nor are Texas consumers benefited, by enjoining Coke from engaging in such conduct with respect to markets outside Texas or by awarding the [Royal Crown] franchisees damages incurred in their operations outside Texas."  *Id.* at 683.

extraterritorial effect by implication unless that intent is clear. *Harmar*, 218 S.W.3d at 682; *see Westwind Acquisition Co. LLC v. Universal Weather & Aviation, Inc.*, 668 F. Supp. 2d 749, 753 (E.D. Va. 2009) (following *Harmar* and holding that because the Texas lien statute did not suggest the statute was intended to apply to conduct outside of Texas, the statute would not apply to activity that occurred elsewhere).

The Fifth Circuit concluded that a DTPA claim had to be dismissed where the injury, conduct, parties, and relationship between the parties occurred in other states. *See Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996); *see also Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996) (holding that the DTPA was inapplicable where all activities took place out of state and were not directed toward a Texas resident).

Plaintiffs seek relief under Texas statutes for out-of-state conduct by Security Investments and alleged injury to Plaintiffs that is based on business Plaintiffs allegedly lost primarily in Ohio. Plaintiffs' reliance on inapplicable Texas statutes is ineffectual.

2.   **The Commerce Clause Precludes Application of Texas Law to Out-of-State Conduct**.

Plaintiffs' state law claims are also precluded by the Commerce Clause.[6]   The Constitution has a special concern with the autonomy of individual states and the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335-36 (1989). The power to regulate commerce among the states is granted to the federal government by the Commerce Clause. *Id.* at 326 n.1. Although the clause's text affirmatively grants power to Congress to regulate interstate commerce, the clause also has a self-executing limitation on the power of states to enact laws

---

[6]   As discussed above, the causes of action should not be given extraterritorial effect under the *Harmar* analysis. This is also consistent with the principle that Texas statutes are to be interpreted in a manner that renders the statutes constitutional. *City of Houston v. Clark*, 197 S.W.3d 314, 320 (Tex. 2006).

imposing substantial burdens on interstate commerce.  *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010).  This "dormant" form of the Commerce Clause prevents states from erecting barriers against interstate trade.  *Id.*

Therefore, the Constitution limits the extraterritorial effects of state regulation.  *Healy*, 491 U.S. at 336; *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) (holding that no state can impose its own policy choice on neighboring states).  "The Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy*, 491 U.S. at 336.

As a result, a state cannot "project its legislation" into another state.  *Int'l Dairy*, 622 F.3d at 645 (*quoting Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935)).  Where the practical effect of a statute is to regulate out of state commerce, the Commerce Clause precludes application of the statute.[7]  Even a de minimis regulation of extraterritorial commerce may violate the Commerce Clause.  *Eric M. Berman, P.C. v. City of New York*, 895 F. Supp. 2d 453, 488 (E.D.N.Y. 2012).

The location where the regulated transaction is consummated is the location used to determine whether the law impermissibly regulates extraterritorial commerce.  *Berman,* 895 F. Supp. 2d at 483.  This is the result regardless of whether another aspect of the commercial activity occurs within the state, such as use of the product or service within the state, the subsequent sale of the product or service within the state, or a party's residence in the state.

---

[7] *See Healy*, 491 U.S. at 326, 328, 337-38 (invalidating Connecticut statute requiring out-of-state shippers to affirm their posted prices are no higher than prices in border states); *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 583 (1986) ("That the ABC Law is addressed only to sales of liquor in New York is irrelevant if the 'practical effect' of the law is to control liquor prices in other States."); *Teltech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571, 576-77 (S.D. Miss. 2011), *aff'd on other grounds*, 702 F.3d 232 (5th Cir. 2012) (holding that the Mississippi statute prohibiting caller ID spoofing violated the Commerce Clause because the statute had the practical effect of regulating commerce occurring outside the state).

*Berman*, 895 F. Supp. 2d at 483.  Based on these principles, state laws attempting to regulate out of state commerce are invalid.[8]

Plaintiffs' attempt to apply the Texas statutory causes of action to out-of-state conduct and alleged out-of-state damages is improper and would violate the Commerce Clause. Accordingly, Plaintiffs fail to state a claim upon which relief can be granted.

## IV.  PRAYER FOR RELIEF

Because the Court lacks personal jurisdiction over Security Investments and Plaintiffs' state law claims fail to state a claim upon which relief can be granted, Security Investments respectfully requests that the Court grant this motion, dismiss the claims against Security Investments, dismiss Security Investments from this action, and grant such other and further relief to which it is justly entitled.

---

[8]  *Peterbilt-Southern Sales, Inc. v. Pac. Car & Foundry Co.*, 325 F.2d 420 (5th Cir. 1963) (per curiam) (transaction from which the suit arose was in interstate commerce and therefore not subject to Texas antitrust statutes); *Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 486-87, 489-90 (4th Cir. 2007) (law prohibiting a manufacturer from selling a vehicle in the state would violate the Commerce Clause by projecting the state's legislation into other states and regulating commerce out of the state's borders); *Estate of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1124, 1126 (C.D. Cal. 2012) (California statute regulating the out-of-state sale of fine art, so long as the seller resided in the state, violated the Commerce Clause despite the commerce had some in-state effect).

Respectfully submitted,


*/s/ Greg K. Winslett*
Greg K. Winslett
Texas Bar No. 21781900
gwinslett@qslwm.com
Brent Lee
Texas Bar No. 24036959
blee@qslwm.com
**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR DEFENDANT
SECURITY INVESTMENTS LLC**


<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the foregoing document has been served to all counsel of record in accordance with the Federal Rules of Civil Procedure, via ECF, on the 5th day of August, 2015.


*/s/ Greg K. Winslett*
Greg K. Winslett