UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADT, LLC, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:15-CV-2252-G |
| CAPITAL CONNECT, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Security Investments LLC ("Security Investments"), to dismiss the plaintiffs' complaint for lack of personal jurisdiction and for failure to state a claim for relief (docket entry 40). For the reasons set forth below, the defendant's 12(b)(2) motion to dismiss is granted.

### I. BACKGROUND

#### A. Factual Background

The plaintiffs, ADT LLC and ADT US Holdings, Inc., assert claims for unfair competition under both Texas common law and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See* Complaint ¶¶ 153-71 (docket entry 1). ADT LLC, a well-

known provider of electronic security services in the United States, is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. *Id.* ¶ 2. ADT LLC uses ADT trademarks under licenses from the plaintiff ADT US Holdings, Inc., a Delaware corporation with its principal place of business in Boca Raton, Florida. *Id.* ¶¶ 1-2. On July 7, 2015, ADT LLC and ADT US Holdings, Inc. (collectively, "ADT" or "plaintiffs"), brought this suit against Capital Connect, Inc. ("Capital Connect"), Power Home Technologies, LLC ("Power Home"), Security Investments, Alliance Security Inc. ("Alliance Security"), Maximum Security Alarm, Inc. ("Maximum Security"), John Lee ("Lee"), John Backus ("Backus"), Victor Vega ("Vega"), Trevor McAlees ("McAlees"), and Anthony Bonardi ("Bonardi") (collectively, "defendants") seeking damages and injunctive relief for false sales pitches allegedly used by defendants to take over ADT alarm accounts. *Id.* ¶¶ 26-37.

The defendant Security Investments is an Ohio limited liability company with its principal place of business located in Westerville, Ohio. *Id.* ¶ 6. Security Investments is a dealer for one of ADT's direct competitors, Monitronics International, Inc. ("Monitronics"), a company whose central monitoring station is located in Dallas, Texas. *Id.* ¶¶ 21-22, 24. ADT claims that Security Investments used the ADT trade name to confuse homeowners into believing that Security Investments was associated with ADT by making "false and misleading statements to ADT customers that they were representatives of, employed by, or otherwise directly

associated with ADT." *Id.* ¶ 27.  ADT alleges that after ADT customers sign a new

contract with Security Investments, Security Investments sells these customers'

contracts to Monitronics, which then monitors the new customers' alarm systems.  *Id.*

¶ 21.

## B.  Procedural Background

In its complaint, ADT asserted claims for unfair competition under the

Lanham Act and the common law.  See *id.* ¶¶ 153-71.  On August 5, 2015, Security

Investments filed this motion to dismiss, contending both that the court lacks

personal jurisdiction over Security Investments with respect to all of ADT's claims

and that ADT's complaint fails to state a claim for common law unfair competition.

*See* Defendant's Motion to Dismiss ("Motion") at 1 (docket entry 40).  ADT filed its

response to the motion to dismiss on August 26, 2015.  *See* Plaintiffs' Response to

Defendant's Motion to Dismiss ("Response") (docket entry 67).  Security

Investments then filed its reply to ADT's response on September 8, 2015.  *See*

Defendant's Reply Brief in Support of Its Motion to Dismiss ("Reply") (docket entry

78).  The motion is now ripe for consideration.

## II. ANALYSIS

### A. Rule 12(b)(2) Motion to Dismiss

Security Investments argues that the suit against it should be dismissed because this court lacks personal jurisdiction over it and because the plaintiffs have failed to state a claim upon which relief may be granted. *See generally* Motion. Because the court concludes that it does not have personal jurisdiction over Security Investments, it pretermits discussion of whether the plaintiffs have stated a claim upon which relief may be granted.

### 1. *Legal Standard*

When jurisdiction is founded "upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, [Rule 4] requires that the state's standard of amenability to jurisdiction apply." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983) (addressing former Rule 4(e)) (following *Burstein v. State Bar of California*, 693 F.2d 511, 514 (5th Cir. 1982)); *Rolls-Royce Corporation v. Heros, Inc.*, 576 F. Supp. 2d 765, 785-86 (N.D. Tex. 2008) (Fitzwater, Chief J.). Conversely, when a federal statute authorizes "nationwide service" "minimum contacts with the United States will satisfy the due process prong of the personal jurisdiction test." *Entek Corporation v. Southwest Pipe & Supply Co.*, 683 F. Supp. 1092, 1100 (N.D. Tex. 1988) (Maloney, J.) (citing *Point Landing, Inc. v. Omni Capital International, Ltd.*, 795 F.2d 415 (5th Cir.

1986) (per curiam) (en banc), *aff'd sub nom. Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97 (1987); *Terry v. Raymond International, Inc.*, 658 F.2d 398 (5th Cir. 1981), *cert. denied*, 456 U.S. 928 (1982)).   "[W]hen a plaintiff invokes federal question jurisdiction and serves process under a state long-arm statute, a federal court can assert jurisdiction only if the state court could have done so." *Petroleum Helicopters, Inc. v. Avco Corporation*, 804 F.2d 1367, 1371 (5th Cir. 1986).

The Texas long arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE § 17.041. "The Texas Supreme Court has interpreted the 'doing business' requirement broadly, allowing the long arm statute to reach as far as the federal Constitution permits." *Gundle Lining Construction Corporation v. Adams County Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)). "Consequently we will analyze the exercise of personal jurisdiction over nonresidents with reference to federal constitutional limits."  *Id.*

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a nonresident defendant:  (1) the nonresident must have sufficient contacts with the forum, resulting from affirmative action on its part, such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair and reasonable to require the nonresident to defend itself in the forum state.  See *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78

(1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)) (internal quotation marks omitted).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant -- specific jurisdiction and general jurisdiction. Specific jurisdiction exists if

the cause of action "arises from or relates to the defendant's contact with the forum state," and those contacts meet the due process standard. *Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)) (internal quotation marks omitted).  With regard to a corporation, general jurisdiction may be found when the nonresident is (1) incorporated in the forum state; (2) operates its principal place of business in the forum state; or (3) possesses contacts with the forum that are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 754, 760 (2014) (internal quotations and citations omitted).

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted).

When a nonresident defendant moves to dismiss for lack of personal jurisdiction under F.R. Civ. P. 12(b)(2), "the plaintiff bears the burden of establishing

- 7 -

the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644,

648 (5th Cir.) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985))

(internal quotation marks omitted), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v.

Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  If the district court

chooses to decide the matter without an evidentiary hearing, the plaintiff may meet

its burden by presenting a *prima facie* case for personal jurisdiction.  *Wilson*, 20 F.3d at

648; *Gardemal*, 186 F.3d at 592.  The court will take the allegations of the complaint

as true, except where they are controverted by opposing affidavits, and all conflicts in

the facts are resolved in favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186

F.3d at 592.

## 2.  *Application*

The Lanham Act, the federal statute under which the plaintiffs bring their

cause of action, does not authorize nationwide service of process. See *Tempur-Pedic

International, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 371 (N.D. Tex. 2010)

(Fitzwater, Chief J.) (citing *Frosty Bites, Inc. v. Dippin' Dots, Inc.*, No. 3:01-CV-1532-

M, 2002 WL 1359704, at *2 n.4 (N.D. Tex. June 20, 2002) (Kaplan, Mag. J.)).

"Absent a controlling federal statute regarding service of process, [the district court

must] first determine whether the long arm statute of the forum state permits exercise

of jurisdiction. [The district court] then determine[s] whether such exercise comports

with due process." *Ham v. La Cienega Music Company*, 4 F.3d 413, 415 (5th Cir.

1993) (citing FED. R. CIV. P. 4(e); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992)).  Therefore, the court must determine whether the Texas long arm statute permits the exercise of personal jurisdiction over Security Investments.  Since the Lanham Act does not provide for nationwide service of process, the question of whether this court has personal jurisdiction over Security Investments for both the federal (Lanham Act) claim and the state law (unfair competition) claim is determined by the same analysis.

### a.  General Personal Jurisdiction

Security Investments argues that it lacks the necessary contacts to subject it to general personal jurisdiction in Texas.  *See* Motion at 5-6.  ADT has not made a *prima facie* case that Security Investments's affiliations with Texas are so "continuous and systematic as to render it essentially at home" in Texas.  *Monkton Insurance Services, Limited v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG*, 134 S. Ct. at 761).  It is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."  *Id.*  Security Investments is a limited liability company organized under Ohio law with its principal place of business in Ohio.  *See* Complaint ¶ 6.  ADT has not shown that Security Investments has offices, employees, customers, or operations in Texas.  Also, even though the defendant does business *with* Monitronics, a Texas corporation, Security Investments does not do business *in* Texas merely because of the existence of a

contractual relationship with Monitronics.  *King v. Hawgwild Air, LLC*, No. 3:08-CV-0153-L, 2008 WL 2620099, at \*4 (N.D. Tex. June 27, 2008) (Lindsay, J.) (citing *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602, 611 (5th Cir. 2008)).  There are not enough continuous and substantial contacts so as to render Security Investments at home in Texas.  See *Monkton Insurance Services, Limited*, 768 F.3d at 432.  Therefore, there is no basis for this court to exercise general personal jurisdiction over Security Investments.

b.  Specific Personal Jurisdiction

ADT has not made a *prima facie* case for the exercise of specific personal jurisdiction over Security Investments.  Security Investments argues that Texas may not exercise specific jurisdiction over it because there are no minimum contacts directed at Texas and no nexus between Texas and the conduct of which the plaintiffs complain.  *See* Motion at 6.  In response, ADT presents three facts to support its claim for personal jurisdiction over Security Investments.  *See* Response at 1-5.  First, it asserts that the contractual dealings and communication between Monitronics, a Texas corporation, and Security Investments amount to sufficient contact with Texas so that the defendant "should reasonably anticipate being haled into court" in Texas.  *Id.* at 3.  Second, ADT contends that Security Investments registered with the Texas Secretary of State in October 2013 to operate in Texas and "designated a Texas agent

to receive service of process in its behalf." *Id.* at 4.  Third, it asserts that the

agreement between Monitronics and Security Investments contains a forum selection

clause under which Security Investments agrees to be haled into Texas court in any

"suit, action, or proceeding arising out of or relating to this Agreement." *Id.*

First, the contractual dealings and communication between ADT and Security

Investments are insufficient to establish specific personal jurisdiction over Security

Investments in Texas.  The causes of action in this case do not "arise" out of the

contractual dealings and communications between Security Investments and

Monitronics.  *Stripling*, 234 F.3d at 871.  The unfair competition claims involve

allegations that the defendants misrepresented themselves as technicians/agents

associated with ADT and using false sales pitches.  *See* Complaint ¶¶ 153-71.  Even

though Security Investments receives revenue from Monitronics in Texas, under Fifth

Circuit precedent, even when a company derives millions of dollars monthly from

Texas residents, that fact alone does not demonstrate a business presence in Texas

sufficient to confer personal jurisdiction.  See *Access Telecom, Inc.*, 197 F.3d at 717.

The cause of action in this case arises out of the behavior of Security Investments in

dealing with its customers in Ohio and Virginia, not in Texas.[*]  *See* Complaint ¶¶ 108-

---

[*]       Although ADT alleges that the representatives of Security Investments
interacted with an ADT customer in Virginia (*See* Complaint ¶ 108), the court
acknowledges that the defendant Security Investments disputes the fact that the
company did business in states other than Ohio.  *See* Appendix in Support of
Defendant's Motion to Dismiss ¶¶ 11-12.

14.  The communications between Security Investments and Monitronics do not give rise to the causes of action in this case and therefore do not support the exercise of specific personal jurisdiction.  See *Stripling*, 234 F.3d at 871.

Second, the fact that Security Investments registered with the Texas Secretary of State and designated a Texas agent to receive process on its behalf is not sufficient to establish specific jurisdiction over the defendant.  The act of registering to do business in Texas does not establish jurisdiction unless other sufficient contacts exist so that the defendant could reasonably expect Texas to constitutionally wield judicial power over it.  *Leonard v. USA Petroleum Corporation*, 829 F. Supp. 882, 889 (S.D. Tex. 1993).  The act of designating a Texas agent to receive service of process on its behalf "does not act as consent to be hauled into Texas courts on any dispute with any party anywhere concerning any matter" unless jurisdiction is constitutionally permissible.  *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993).  Jurisdiction is not constitutionally permissible in this case because ADT's claims brought against Security Investment do not *arise out of* the Application for Registration of a Foreign Limited Liability Company filed by Security Investments with the Texas Secretary of State.  See *Stripling*, 234 F.3d at 871.

Finally, the forum selection clause in the contract between Monitronics and Security Investments is not sufficient to establish personal jurisdiction over Security

Investments.  The Monitronics dealer agreement provides that Security Investments submits to the jurisdiction of any court in Texas for "any suit, action, or proceeding *arising out of or relating to this Agreement*."  Appendix to ADT's Response to Defendant's Motion to Dismiss at 14 (docket entry 70) (emphasis added).  ADT's cause of action certainly does not arise out of the agreement between Monitronics and Security Investments.  See *Stripling*, 234 F.3d at 871.  Also, Security Investments could not reasonably expect to be haled into court in Texas from this agreement when ADT is a third party and not a party to the agreement.  See *Burger King*, 471 U.S. at 474.  The forum selection clause does not establish personal jurisdiction over Security Investments.

ADT has not made out a *prima facie* case supporting a finding of specific jurisdiction over Security Investments.  Monitronics provides the only contact between Texas and Security Investments, and the cause of action brought against the defendant does not arise out of that contact.  See *Stripling*, 234 F.3d at 871.  Therefore, Security Investments cannot be haled into court in Texas.

c.  Fair Play and Substantial Justice

If the plaintiff establishes minimum contacts between the defendant and the forum, "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted).

Because no minimum contacts between Security Investments and Texas have been shown, the court need not consider whether an exercise of personal jurisdiction over Security Investments would comport with fair play and substantial justice.

### B.  Rule 12(b)(6) Motion to Dismiss

Because the court's ruling on the Rule 12(b)(2) motion disposes the plaintiffs' claims against Security Investments, the court does not reach the Rule 12(b)(6) motion.

### III.  CONCLUSION

For the reasons discussed above, Security Investments's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

**SO ORDERED**.

November 20, 2015.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**